c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARY CARLSON,<br>Plaintiff | CIVIL ACTION NO. 1:19-CV-00459 |
| VERSUS | JUDGE DRELL |
| DOLLAR GENERAL,<br>Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand and Motion for Attorney Fees (Doc. 8) filed by Plaintiff Mary Carlson ("Carlson"). Carlson alleges the amount in controversy does not exceed $75,000. (Doc. 7, p. 7). Defendant DG Louisiana, L.L.C. ("DG") opposes. (Doc. 10). Because DG has established removal jurisdiction by a preponderance of the evidence and Carlson fails to show, to a legal certainty, her damages do not exceed $75,000, Carlson's Motion to Remand (Doc. 8) should be DENIED.

I.  Background

Carlson filed a Petition for Damages in the Twelfth Judicial District Court, Avoyelles Parish, Louisiana, against "Dollar General."[1]  (Doc. 1-2, p. 1).  Carlson alleges that she fell and was seriously injured while attempting to reach merchandise stocked on the highest shelf at the Dollar General in Hessmer, Louisiana.  Id. Carlson

---

[1] DG was incorrectly named as "Dollar General."  (Doc. 1, p. 1).  For the sake of clarity, the Court will refer to "DG" when referring to Carlson's allegations against "Dollar General."

1

asserts the merchandise was beyond her reach, causing her to step up onto a lower shelf and overextend herself, causing her and the merchandise to fall. Id.

Carlson contends DG knew or should have known of the hazards of stocking merchandise on the highest shelves. Id. Carlson asserts DG, their employees, and agents were negligent for failing to keep their premises in a safe condition; stocking merchandise on the highest shelf; maintaining dangerous and hazardous conditions on their premises knowing that customers like Carlson are invited; failing to properly supervise their premises to avoid creating dangerous conditions; and for their general, careless, egregious, and wanton negligence. Id. Carlson further asserts strict liability against DG, and liability under the doctrine of *res ipsa loquitur*. Id. at 2.

Carlson seeks damages for "[p]hysical pain and suffering (past, present, and future); [m]edical bills and treatment to date (past, present, and future); [m]ental pain and suffering (past, present, and future); [s]hock; and [m]ental anguish (past, present, and future)." Id. Carlson also seeks legal interest and costs. Id. Carlson's Petition asserts her claim does not exceed $50,000. Id.

DG removed on April 11, 2019. (Doc. 1, pp. 1-7). DG alleges the parties are diverse and that Carlson's damages likely exceed $75,000.[2] (Doc. 1, pp. 1-7). DG further asserts the "attorney for [Carlson] has now advised that the damages may exceed the jurisdictional minimum to invoke [f]ederal jurisdiction, i.e. $75,000." (Doc.

---

[2] Carlson is domiciled in Louisiana. (Doc. 1, p. 2). DG asserts it is a wholly owned subsidiary of Dolgencorp, L.L.C., which is wholly owned by Dollar General Corporation. (Doc. 2). Dollar General Corporation is incorporated and has its principal place of business in Tennessee. (Doc. 1, p. 2). There is no dispute there is complete diversity among the parties.

2

1, p. 3). DG contends it ascertained that Carlson's action is removable through "other paper" in the form of medical records obtained through discovery and a letter from Carlson's attorney. (Doc. 1, p. 4).

DG attaches a letter from Carlson's attorney stating that his client is to see an interventional pain specialist and that he will have an answer to the damage amount by April 3. (Doc. 1, p. 3). DG claims there has been no response as of the time of removal. Id. DG attaches medical records, received on March 27, 2019, of Carlson's treatment with Christus St. Frances Cabrini Medical Center showing she was utilizing a walker to ambulate and had compression fractures at T-12 and L-1. Id. DG asserts the medical records point to Carlson alleging multiple spinal fractures in the thoracic and lumbar spine, and treatment with an interventional pain specialist. (Doc. 1, p. 4). DG claims the jurisdictional threshold is met under Louisiana case law even without Carlson receiving any further treatment. Id.

Carlson filed a Motion to Remand (Doc. 8), asserting that her claim does not exceed $75,000 and seeking to stipulate her damages are under the jurisdictional threshold of $75,000. (Doc. 7, pp. 7-10). Carlson seeks costs, actual expenses, and attorney's fees incurred should the Court remand. (Doc. 7, p. 10). DG opposes the remand. (Doc. 10).

II.   **Law and Analysis**

    A.   **Standards governing the Motion to Remand.**

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. See Scarlott v. Nissan N. Am., Inc., 771 F.3d 883,

887 (5th Cir. 2014). Subject matter jurisdiction must exist at the time of removal, based on the facts and allegations contained in the complaint. See St. Paul Reinsurance Co. Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998). Jurisdictional facts are determined at the time of removal, not by subsequent events. See La. v. Am. Nat'l Prop. & Cas. Co., 746 F.3d 633, 635 (5th Cir. 2014). Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

A federal court has "diversity jurisdiction" where the amount-in-controversy exceeds $75,000, exclusive of interest and costs, and where complete diversity exists between the parties. See 28 U.S.C. § 1332(a). The removing party bears the burden of establishing diversity jurisdiction. See Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 397 (5th Cir. 2013). "Any ambiguities are construed against removal and in favor of remand to state court." Id.

Louisiana law forbids plaintiffs from specifying the monetary value of damages. See La. Code Civ. P. art. 893. Accordingly, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882 (5th Cir. 2000). "A removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." Robertson v. Exxon Mobil Corp. 814 F.3d 236, 240 (5th Cir. 2015).

However, "[t]he required 'demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks.'" Id. (quoting Berniard v. Down Chem. Co., 481 Fed.Appx. 859, 862 (5th Cir. 2010)). Moreover, if the removing defendant carries its burden, remand is still warranted if the plaintiff can establish to a "legal certainty" that damages do not exceed $75,000. See De Aquilar v. Boeing Co., 47 F.3d 1404, 1411 (5th Cir. 1995).

### B. Carlson's "anti-removal averment" was not a binding stipulation, confession, or waiver, and therefore, did not "prevent" removal.

Under La. Code Civ. P. art. 893(A)(1), "if a specific amount of damages is necessary to establish . . . the lack of jurisdiction of federal courts due to insufficiency of damages . . . a general allegation that the claim exceeds or is less than the requisite amount is required." However, "rather than irrevocably binding a plaintiff to his amount-in-controversy allegations, an allegation made under Article 893(A)(1) may be disregarded if the defendant can show by a preponderance of the evidence that the claim is for more than the jurisdictional amount." In re 1994 Exxon Chem. Fire, 558 F.3d 378, 388 (5th Cir. 2009) (and cases cited therein).

A Louisiana plaintiff may only "prevent" removal by filing "a binding stipulation or affidavit" in state court renouncing the right to recover damages in excess of $75,000. See De Aguilar, 47 F.3d at 1412. Stated otherwise, "[b]ecause Louisiana plaintiffs are not limited to recovery of the damages listed in their pleadings, a plaintiff must make a judicial confession by affirmatively waiving the right to accept a judgment in excess of $75,000 for his pre-removal state court

5

pleadings and stipulations to bind him." Griffin v. Georgia Gulf Lake Charles, L.L.C., 562 F.Supp.2d 775, 779 (W.D. La. 2008).

Here, Carlson made no stipulations, judicial confession, or affirmative waiver in state court. Rather, Carlson included in her Petition an "anti-removal" averment under La. Code Civ. P. art. 893(A)(1) that her damages do not exceed $50,000. (Doc. 1-2, p. 2). The allegation was "presumptively correct" when made. Griffin, 562 F.Supp.2d at 778. But the averment did not irrevocably limit Carlson's recovery so as to "prevent" removal or necessitate remand. See De Aguilar, 47 F.3d at 1412; see also In re 1994 Exxon Chem. Fire, 558 F.3d at 388.

### C. DG established, by a preponderance of the evidence, that Carlson's claims likely exceed $75,000.00.

DG does not allege that the jurisdictional threshold is "facially apparent" from Carlson's Petition. Thus, DG "must produce evidence . . . that the actual amount in controversy exceeds" $75,000. De Aguilar, 47 F.3d at 1412. In considering whether DG has met its burden, the Court may consider references to general damages awards for similar injuries, as well as Carlson's discovery responses. See, e.g., Stine v. Dolgencorp Inc., CIV. A. 07-0858, 2007 WL 2711015, at *1 (W.D. La. Sept. 13, 2007) (noting a defendant's citations to damage awards in cases involving similar injuries).

Here, DG produced correspondence from Carlson's counsel that she is treating with an interventional spine specialist and deferring on the question of the damage amount until an update on her prognosis or condition after April 2, 2019. (Doc. 1-3, p. 1). At the time of removal on April 11, 2019, DG asserts Carlson's attorney had not given any update as to Carlson's damages. (Doc. 1, p. 3).

6

DG contends they received medical records from Carlson's attorney on March 27, 2019 from Christus St. Francis Cabrini Medical Center. (Doc. 1, p. 3). DG submitted the medical records to support its contentions that the amount-in-controversy exceeds $75,000. A September 25, 2018 medical record shows Carlson presented to the emergency room for complaints of back pain due to a fall the week before in which she was diagnosed with multiple vertebral fractures. (Doc. 1-4, p. 1). The record shows Carlson is ambulatory with a walker. (Doc. 1-4, pp. 1-2). Radiology results from September 17, 2018 from a CT scan of the thoracic spine show findings of compression fractures at T-12 and L-1, and some compression at the T-6. (Docs. 1-4, p. 3). The record notes the "findings are consistent with acute compression fractures." Id. Lumbar spine x-rays on that same date show a compression fracture at the L-1 and T-12 that "appear to be acute." (Doc. 1-5, p. 1).

Carlson responds in an "Answer to Defendant's Notice of Removal" (Doc. 7) that her attorney informed DG on April 12, 2019 that Dr. Ben Barone ("Dr. Barone") would treat Carlson conservatively by ordering a back brace and allow routine healing and no surgical intervention. (Doc. 7, p. 4). Carlson asserts that medical records forwarded to DG's counsel on March 27, 2019 were from September 2018 emergency room visits noting only back pain and not "hip pain." (Doc. 7, p. 5). Although not indicated in the record, Carlson contends that the walker referenced in the records is a previous appliance she utilizes from years before and is not a result of injuries from this accident. Id. Additionally, Carlson contends she will stipulate that she will not seek damages in excess of $75,000. (Doc. 7, p. 5, 8).

Carlson argues her injuries are being treated conservatively and that surgery is not an option due to her age and previous surgeries. (Doc. 7, p. 8). Carlson submitted a one-page medical record dated April 17, 2019 from Dr. Barone for the prescription of the back brace. (Doc. 7, p. 12). The record shows Carlson's diagnoses are a wedge compression fracture of the T-12 vertebrae and a stable burst fracture of the first lumbar vertebrae. (Doc. 7, p. 12). There is no reference regarding a prognosis or a discussion of whether treatment will be conservative.

The medical records submitted by DG show two, possibly three acute compression fractures, to a 70-year-old who, by Carlson's assertions, has limited treatment options because of her age and prior surgeries. DG shows Louisiana case law establishes general damages for compression fractures of the T-12 and L-1 will likely exceed the jurisdictional threshold of $75,000. (Doc. 1, p. 4); see Simmons v. Calcasieu Community Center Playground, 524 So. 2d 775 (La. App. 3 Cir. 2/3/88) (upholding an award of $100,000 where seven-month pregnant mother sustained concussion to the brain and a compression fracture at T-12 and L-1 when a bleacher collapsed, she was restricted from pain medication due to pregnancy, and could not receive adequate support from her back brace during pregnancy); Comeaux v. Acadia Parish School Board, 13 So. 3d 252 (La. App. 3 Cir. 6/3/09) (upholding an award of $35,000 for future medical expenses and $150,000 for general damages where a high school student during a cheerleading stunt sustained two compression fractures at the T-12 and L-2, spent eight weeks in a back brace, and was restricted from future high-impact sports); Istre v. Bratton, 653 So. 2d 1205 (La. App. 3 Cir. 3/8/95)

(upholding an award of $50,000 for future medical expenses, and amending a general damage award to $75,000 to plaintiff's minor child with a forehead laceration, compression fractures and two non-displaced transverse fractures at the L2 and L3 levels, and epidural hematoma with 20% whole body impairment).

Additionally, Carlson claims she was "seriously injured," "fell on her backside," and "suffered great pain." (Doc. 1-2, p. 1). She seeks damages for "[p]hysical pain and suffering (past, present, and future); [m]edical bills and treatment to date (past, present, and future); [m]ental pain and suffering (past, present, and future); [s]hock; and [m]ental anguish (past, present, and future)." (Doc. 1-2, p. 2). Although there is no record evidence of Carlson's medical expenses, the medical records and letter from Carlson's attorney evidence multiple emergency room visits, ongoing treatment with an interventional spine specialist, and diagnostic imaging. (Docs. 1-3; 1-4; 1-5; 7). Carlson seemingly admits her recovery could be more than $50,000 but through post-removal stipulation seeks to limit her damages between $50,000 and $75,000. (Doc. 7, pp. 7-8). Although the evidence before the Court is limited, DG has shown that the amount-in-controversy will – more likely than not – exceed $75,000.

### D. Carlson has not shown to a legal certainty that her damages do not exceed $75,000.

Although DG has carried its burden to establish jurisdiction by the preponderance of the evidence, Carlson may still prevail by proving, to a legal certainty, that her damages do not exceed $75,000. See De Aquilar, 47 F.3d at 1411. Carlson asserts she is willing to stipulate that her damages do not exceed $75,000. (Doc. 7, pp. 8-9). However, it is well settled that post-removal stipulations "generally

9

do not divest the court of diversity jurisdiction." See Gebbia, 233 F.3d at 883; De Aguilar, 47 F.3d at 1412. Regardless, no binding stipulation was entered by Carlson and Carlson has not otherwise shown, to a legal certainty, that her damages do not exceed $75,000.

### III. Conclusion

Because DG has established removal jurisdiction by a preponderance of the evidence and Carlson fails to show, to a legal certainty, her damages do not exceed $75,000;

IT IS RECOMMENDED that Carlson's Motion to Remand and Motion for Attorney Fees (Doc. 8) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party

from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this __6th__ day of November 2019.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE